UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs                                Case No: 06-20185
                                    Honorable Victoria A. Roberts

ROY WEST,

      Defendant.

_____/

## ORDER DENYING GOVERNMENT'S REQUEST TO SOLICIT TESTIMONY FROM QUANIESHA BELL THAT LEONARD DAY SAID, "ROY DID IT."

In a footnote in a Reply Brief filed by the Government on March 25, 2011 (Doc. #587), the Government says it plans to introduce at this retrial of Roy West, a statement allegedly made to Quaniesha Bell by Leonard Day after he was shot multiple times, that "Roy did it." The Government revealed this intention 10 days before trial was to begin, and restated this intention at the conclusion of the second day of trial on April 5th.

This statement became known to the Government during the trial of Co-Defendant Marcus Freeman, on October 6, 2010, when counsel for Freeman cross-examined Ms. Bell concerning the statement she gave to Federal Defender Office investigator Greg Morris on September 3, 2010. It was during that interview that Ms. Bell first revealed the statement Leonard Day had allegedly made to her on December 20, 2005; she had not before told federal agents about this alleged statement.

At the first trial of Roy West, and specifically on November 17, 2010, there was a sidebar discussion between the Court, Ms. Bell, Elizabeth Stafford and Byron Pitts. That

1

discussion was to make certain that Ms. Bell did not blurt out during her testimony, that

Leonard Day made that statement to her:

> Ms. Stafford: There are a couple of things.  One is that we
> want to make sure Ms. Bell, that she knows not to talk about
> the fact that after Leonard Day was shot that he said
> anything about Roy West or Roy.  So don't say anything
> about that.

Counsel agree that this stipulation was in exchange for the following agreement

concerning other evidence that the Defendant sought to admit:

> Ms. Stafford: I think Mr. Pitts and I have come to an
> agreement that we are not going [to] raise the most wanted
> poster.  So if you could also –
>
> Mr. Pitts: You may or may not be asked about did you learn
> that Leonard Day was wanted for serious crimes.  But I'm
> not going to ask you did you learn that from any most
> wanted list.
>
> Ms. Stafford: Or what he was wanted for.
>
> Mr. Pitts: Or what I was wanted for.  I'm not going say from
> the most wanted list.  You are not supposed to say either.
> Do you understand?
>
> The Witness: Yes.

With this stipulation, the Court never decided the admissibility of the statement

allegedly made to Quaniesha Bell by Leonard Day.

However, in connection with a Motion filed on January 21, 2009 by Roy West

(joined by all other defendants, except Marcus Freeman) to keep out all statements

made by Leonard Day after he was shot (Doc. # 253), the Court did rule that a very

similar statement allegedly made by Leonard Day to an investigating officer within

approximately twenty minutes of his shooting, did qualify as an "excited utterance"

under Fed. R. Evid. 803(2) and was admissible.  Again, in the context of that motion, the Government and Roy West stipulated that the Government would not seek to admit the statement against Roy West and certain other Defendants. Accordingly, the Court limited its analysis and holding to Marcus Freeman, and held that the statement was exculpatory as to him and admissible as an excited utterance.

With this ruling, and the stipulation that the statement would not be offered against Roy West and other Defendants, the Court severed Marcus Freeman from the other Defendants for trial.

For whatever reason, Freeman did not seek to have the statement Leonard Day made to Officer Bresinski that "Roy did it," admitted during his trial. However, the same statement allegedly made to Quaniesha Bell and at issue here, was admitted offensively by the Government at Freeman's trial during her redirect examination.  This was only after its existence was revealed during Quaniesha Bell's cross examination by Freeman's counsel.

The issue before the Court now, is whether the Government should be bound by the stipulation it placed on the record on November 17, 2010, during Roy West's first trial.

The Government says it entered into the stipulation hastily and under a misapprehension of the law, and cited to *Davis v. Washington*, 547 U.S. 813 (2006).  It argues that it should not now be bound by a misinformed stipulation.

The Supreme Court's holding in *Davis* is clear: the Sixth Amendment only bars admission at trial of *testimonial* statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity

3

to cross-examine the witness. 547 U.S. at 823-26 (2006).  The Court explained that a testimonial statement typically involves "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Id.* at 824 (citation and quotation marks omitted).  The Court then held, statements made by a domestic violence victim to a 911 operator while the events were taking place, were non-testimonial in nature because their primary purpose was to "enable police assistance to meet an ongoing emergency."  *Id.* at 828.  The victim "simply was not acting as a *witness*; she was not *testifying*."  *Id.* (emphasis in original).

Similarly, Leonard Day was not cast in the role of a testifying witness when he told Ms. Bell "Roy did it," immediately after the shooting.  *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").

Roy West argues that the Government should be bound, and that to allow the admission of that statement at this trial, would be highly prejudicial to him.  He says that had he known the Government would seek admission of the statement, he may have chosen to plead guilty.

The Court excludes the statement under Fed. R. Evid. 403, which reads: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Government has known of the statement since October 2010. The

4

Government knew when a mistrial was declared on November 30, 2010, that it would retry Roy West. The Government also had no reason to believe that Roy West would change his trial strategy and not seek to implicate the "C-Note Robber" in Leonard Day's death. Thus the Government's footnote -- that it would seek to admit the statement made to Quaniesha Bell if Roy West tried to suggest the C-Note Robber killed Leonard Day -- is disingenuous.

The Government's reason for withdrawing from the stipulation is that it misapprehended the law.  This does not ring true. The Court had already ruled that Leonard Day's statement qualified as an excited utterance under Fed. R. Evid. 803(2). The Court made this ruling in October 2009, based on the statement having been made to law enforcement.  (Doc. # 354).  Given the holding of *Crawford*, 541 U.S. at 53, that the Confrontation Clause of the Sixth Amendment is primarily concerned with testimonial hearsay -- in *Crawford*, that being statements made to law enforcement officers during a formal investigation -- this Court's ruling would have been far less controversial if it had been rendered based on the fact that it had been made unsolicited to a lay person such as Quaniesha Bell, right after the shooting, rather than to someone in law enforcement during an interview at a later time.

Finally, the Government argues that Day's statement to Ms. Bell that "Roy did it," is not hearsay at all because it is not offered to prove that Roy committed the actual shooting; since it is uncontradicted that West was in Akron when Day was shot, he could not have been an actual shooter.  The Government says, instead, the statement is evidence that Day did not implicate the C-Note Robber in the shooting.  This reasoning is not convincing.  If the Government wants to use the statement as evidence

5

that the C-Note Robber did not commit the murder, then by implication, the Government wants to use the statement to show that West was involved in the shooting.  While the evidence would not be used to prove that West was at the scene of the crime and was an actual triggerman, it would clearly be offered to prove that West was behind the murder.  Thus, it is offered to prove the truth of the matter and is hearsay.

Frankly, given the law, the Court was surprised that the Government stipulated that it would not try to admit the statement as a non-testimonial exception to the hearsay rule. Even if the Government did misapprehend the law last November, it certainly had time between then and the eve of this trial, to understand what the law permitted, and to notify Roy West that it would seek admission of the statement.

The Government's argument that it put Roy West on notice by mentioning its intent in its March 25th Reply Brief footnote, is unavailing. A Reply Brief cannot be responded to unless the Court grants leave. More importantly, this monumental game changer evidence is deserving of more than a footnote.

The Court finds that the Government's notice to Roy West is too late, when it has had the evidence for nearly six months before this retrial was scheduled to start, and never told Defendant that it intended to withdraw from its prior stipulation until 10 days before trial was to begin.

The evidence is more prejudicial than probative and is inadmissible under Fed. R. Evid. 403.

6

**IT IS ORDERED.**

_____/s/ Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  April 7, 2011

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 7, 2011. |
| --- |
| s/Linda Vertriest |
| Deputy Clerk |