UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                   Case No: 06-20185
                                                     Honorable Victoria A. Roberts

ROY WEST,

    Defendant/Petitioner.
_____/

## ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 (DOC. #804)

### INTRODUCTION

A jury convicted Roy West ("West") of conspiracy to use interstate facilities in the commission of a murder for hire, in violation of 18 U.S.C. §1958. West received a sentence of life without the possibility of parole. The Sixth Circuit Court of Appeals affirmed his conviction; his petition for *writ of certiorari* was denied. West files a motion pursuant to 28 U.S.C. §2255 to vacate, set aside or correct his sentence. The motion is **DENIED**.

### BACKGROUND

In November 2005, the Federal Bureau Investigation ("FBI") began wiretapping cellular phone conversations of several individuals, including West (also known as "Buck") as part of a separate drug investigation. From listening to various phone conversations between the subjects, the FBI learned that Leonard Day, who was also known as "Buck," had stolen about $100,000 in cash, $250,000 in jewelry, a gun, and car keys from West while staying at West's home in Ohio. Accordingly, West searched for Day, with

1

assistance from Christopher Scott and Marcus Freeman. In December 2005, Day was shot while leaving a house in Detroit.

West, Freeman, and Scott were charged with and convicted of crimes related to Day's death. The Sixth Circuit Court of Appeals reversed Freeman's conviction, holding that the trial court erroneously admitted improper lay-testimony of FBI Agent Peter Lucas, a Government's witness. *United States v. Freeman*, 730 F.3d 590 (2013). The trial court vacated Scott's conviction following the *Freeman* decision; Scott's motion for new trial was granted.

## WEST'S ISSUES

These are the grounds for West's motion:

A. There was insufficient evidence for the jury to convict him of conspiracy to commit murder-for-hire.

B. The district court abused its discretion by permitting Agent Lucas to testify as both fact and expert witness without a cautionary instruction to the jury regarding his dual roles.

C. Appellate counsel provided ineffective assistance of counsel by failing to argue that Agent Lucas gave improper lay testimony.

D. Trial counsel was ineffective in the following ways:

   1. Failed to request a cautionary instruction regarding Agent Lucas's dual role as fact and expert witness.

   2. Failed to request a voice exemplar of West' voice to compare to voices on tapes that the Government contended were instances when West spoke.

   3. Failed to investigate potential witness that would help West's defense.

4. Violated Fed. R. Crim. P 12(d) for failing to seek a ruling from the district court on the impact an Ohio authorization to conduct wiretap had on the Michigan authorization.

5. Failed to investigate a causation defense.

6. Failed to file a Rule 33 motion regarding Agent Lucas' dual role as expert and fact witness.

### E. STANDARD OF REVIEW

A prisoner in custody under sentence of a federal court may move to vacate, correct, or set aside the sentence on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a).

To prevail on a §2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict" *Humphress v. United States,* 398 F.3d 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)). If alleging a non-constitutional error, petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States,* 165 F.3d. 486, 488 (6th Cir. 1999) (quoting *U.S. v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v United States*, 368 U.S. 424, 428 (1962)).

## ANALYSIS

### A. WEST'S MOTION FAILS ON INSUFFICIENT EVIDENCE GROUNDS.

West says his conviction rests on insufficient evidence. The Government says this argument was already raised on his direct appeal, and West is now barred from relitigating it in this §2255 motion. The Government's position is well taken.

In *United States v. West,* 534 Fed. Appx. 280, 285–86 (6th Cir. 2013) (unpublished), West made the same argument as here. The Sixth Circuit declined to reverse his conviction based on this argument. It held that West did not meet his burden of proof, and, when viewed in the light most favorable to the Government, the evidence was sufficient to demonstrate that West was guilty beyond reasonable doubt. *Id.*

"[A] §2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States,* 178 F.3d. 790, 796 (6th Cir. 1999). *See also DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996); *Stephan v. United States,* 496 F.2d 527, 528–29 (6th Cir. 1974) (rejecting a defendant's attempt to relitigate issues in a habeas action that had already been litigated on direct appeal).

No exceptional circumstances are present here, nor have there been intervening changes in the law. West cannot relitigate his insufficiency of evidence issue. His motion on this ground is DENIED.

### B. WEST FAILED TO RAISE AGENT LUCAS' DUAL ROLE ON DIRECT APPEAL.

West says the district court abused its discretion by permitting Agent Lucas to testify as both a fact and expert witness without a cautionary instruction to the jury regard

his dual roles. The Government says West failed to raise this issue on direct appeal and he is procedurally defaulted.

A §2255 motion is not a substitute for a direct appeal. *Warner v. Zent*, 997 F.2d 116, 131 (6th Cir. 1993); *see also Peveler v. United States,* 269 F.3d 693, 698–99 (6th Cir. 2001); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003) (citing *U.S. v. Frady*, 456 U.S. 152, 167-8 (1982)*.* As a general rule, claims not raised on direct appeal may not be raised on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003), *see also Bousley v. United States*, 523 U.S. 614, 615 (1998).

The exception to the general rule can be found when the petitioner demonstrates (1) "cause"—why he failed to raise the issue earlier and (2) actual "prejudice" flows from the default. *Bousley,* 523 U.S. at 622. Alternatively, petitioner can assert that he is "actually innocent." *Id.* "The hurdle [a petitioner] faces in excusing his procedural default is intentionally high ..., for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Peveler* 269 F.3d at 700 (quoting *Elzy v. United States,* 205 F.3d 882, 884 (6th Cir. 2000)) (quotation marks omitted).

This issue was not raised by West in his direct appeal. *See United States v. West,* 534 Fed. Appx. 280 (2003). In his §2255 motion, West argues he was prejudiced by the court's error, but he did not address the "cause" for his procedural default. Nor does he argue "actual innocence" as an exception to the general procedural default rule. West's motion is DENIED on this basis.

**C. WEST FAILS ON HIS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM.**

West contends that appellate counsel provided ineffective assistance by failing to argue that Agent Lucas gave improper fact and lay testimony during trial. West says he specifically requested appellate counsel to raise this issue. He also states that appellate counsel never sent him a draft of his brief for review and failed to answer West's question about this issue, which West characterized as a "dead-bang winner."

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to the assistance of counsel in his defense. U.S. CONST. amend. VI: s*ee Strickland v. Washington*, 466 U.S. 668, 685 (1984). A defendant claiming he received ineffective assistance of counsel must satisfy the two pronged inquiry of *Strickland*; he must show his counsel's representation: (1) "fell below an objective standard of reasonableness" and; (2) that the deficient performance prejudiced him. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000). When determining reasonableness under the first prong, courts must evaluate counsel's conduct on the facts of the particular case, viewed as of the time of the particular conduct, and this scrutiny must be highly deferential. *Id.* To establish prejudice under the second prong, the defendant must demonstrate that there is a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Regalado v. United States,* 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001) (quoting *Strickland,* 466 U.S. at 694).

The right to effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Carpenter v. Mohr,* 163 F.3d 938, 946 (6th Cir. 1998). However, a criminal

6

defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983). "[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1987) (quoting *Jones,* 463 U.S. at 751–52)). Although appellate counsel need not raise every non-frivolous issue on appeal, counsel may be deemed ineffective for omitting a "dead bang winner", i.e., an issue obvious from the trial record which would have resulted in reversal on appeal. *See Meade v. Lavinge,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

In *United States v. Freeman,* 730 F.3d 590, 599–600 (6th Cir. 2013), the appeal court rejected the same argument the Government makes here - that Agent Lucas was an expert witness. The Sixth Circuit found there was not enough foundation to qualify Agent Lucas as an expert because it was not clear what expert methodology he relied on to form his opinions as required by FED. R. EVID. 702. *Id.*

However, the evidence in West's trial unfolded vastly different than it did in Freeman's trial, and West does not have the same prejudice arguments to make as Freeman did. West fails to satisfy the *Strickland* test.

> *a. Agent Lucas's testimony in West's trial was vastly different than it was in the Freeman trial.*

West relies heavily on the Sixth Circuit's decision to vacate the conviction of his co-defendant, Marcus Freeman in *United States v. Freeman,* 730 F.3d 590 (2013). The

7

Court found that the prosecution failed to lay the proper foundation for lay testimony given by Agent Lucas, and that erroneous admission of the testimony was harmful enough to warrant a decision to vacate his conviction. The Court said by interpreting phone calls only on his knowledge of the entire investigation, Lucas impermissibly testified based only on information not before the jury, including hearsay. The Court also said that the jury might think Lucas was privy to important information about the case that the jury lacked. *Freeman,* 730 F.3d at 596–97; s*ee also United States v. Kilpatrick,* 798 F.3d 365, 370–80 (6th Cir. 2015). In *Freeman*, Agent Lucas "repeatedly substantiated his responses and inferences with generic information and references to the investigation as a whole" and "the general knowledge of the FBI," instead of specifying "personal experiences that led him to obtain his information." *Freeman,* 730 F.3d at 596. By doing so, he "spoon-fed his interpretations of the phone calls and the government's theory of the case to the jury, interpreting even ordinary English language." *Freeman* at 597*.*

This finding in *Freeman* does not suggest a "dead bang winner" for West. In West's trial, Agent Lucas did not interpret recorded audio in the same way that he did in the Freeman trial. For example, in both West's and Freeman's trial, the jury was presented with an intercepted call between Freeman, Scott and West minutes after Day was shot; the relevant part of the conversation is:

> WEST: What's good?
> FREEMAN: Everything good, man. Except for, you know … you know what I'm talking about … just that one little thing. We ain't get the bonus, dog. But, you know what I'm sayin', the situation is over with. *Freeman* at 598.

In Freeman's trial, when asked what "situation" Freeman was referring to in this phone call, Agent Lucas said, "The situation discussed was regarding Leonard Day and

8

having his stolen jewelry from Roy West, Roy West having put a hit on Leonard Day and Leonard Day ultimately killed." Agent Lucas did not give the same testimony in West's trial. Indeed, in West's trial, Agent Lucas was explicitly instructed to not interpret phone calls. Tr. Of Trial 63:16-17, ECF No. 606.

West objected to Agent Lucas's interpretation of the slang terms. However, both parties had a pretrial agreement that Agent Lucas could do so. Tr. Of Trial 63:06-13, ECF No. 606.

Overall, in West's trial, Agent Lucas testified based on his personal knowledge and not "the investigation as a whole."

   *b. West's appellate counsel's performance was not deficient.*

The performance of West's appellate counsel did not fall below an objective standard of reasonableness. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland,* 466 U.S., at 690) (quotation marks omitted).

As indicated above, Agent Lucas' so-called problematic testimony in West's trial is not a "dead bang winner." And, in an email to West, appellate counsel explained that she did not raise Agent Lucas' testimony issue because it would be considered harmless. She recognized the difference between West's trial and *Freeman*: in West's trial Agent Lucas' testimony is corroborated by another witness; in *Freeman,* it was not. Additionally, West's appeal was decided in August, 2013. The conviction of Scott - West's co-defendant - was vacated in October, 2013. It was not obviously clear from the record that if the issue of

9

Agent Lucas' testimony had been raised in the appeal, West's conviction would have been vacated.

Counsel's decisions are accorded deference, and the Court evaluates them based on "facts of the particular case, viewed as of the time". *Strickland v. Washington*, 466 U.S. 668, 690 (1984). In this case, West's appellate attorney, by winnowing out the arguments that she reasonably believed to be weaker on appeal and by focusing on those more likely to prevail, effectively provided West with assistance of appellate counsel.

Because the decision to not raise the issue of Agent Lucas' testimony on appeal was reasonable, it is unnecessary to address the prejudice prong of the *Strickland* test. West's motion is DENIED on this ground.

## D. WEST FAILS ON HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**1. West contends that trial counsel provided ineffective assistance by failing to request the district court to give a cautionary instruction regarding Agent Lucas' dual role as a fact and expert witness.**

When a witness gives both fact and expert testimony, the district court must give "a cautionary jury instruction regarding the dual witness roles" or there must be "a clear demarcation between [the witness's] fact testimony and expert opinion testimony." *United States v. Ham,* 628 F.3d 801, 806 (2011) (quoting *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010); *United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006)).

Agent Lucas testified as a fact witness on information personally known to him, and as an expert witness in interpreting slang terms used in drug and gang activity. No cautionary instruction existed, nor was there a clear demarcation between the fact and expert testimony. While West's attorneys filed a Motion in Limine that pointed out Agent

10

Lucas' dual role, they did not request a cautionary jury instruction. Arguably, this fell below the objective standard of reasonableness required by *Strickland*.

However, trial counsel's omission did not prejudice West's defense within the meaning of *Strickland*. The record shows that the jury was instructed that "it [was to] be up to [them] to decide which witness to believe, which witness not to believe, and how much of any witness testimony to accept or to reject." Tr. Of Trial 79:9–12, ECF No 660. They were then instructed at the end of the trial to ask "if the witness had any relationship to either the Government or to Roy West or anything to gain or lose from the case that might influence the witness's testimony" and "if the witness had any bias or prejudice or reason for testifying that might cause the witness to lie or to slant testimony in favor of one side or the other." Tr. Of Trial 59:10–14, ECF No. 679.

In addition, even though Agent Lucas was not specifically presented to the jury as an expert, his opinion on slang terms was based on specialized training and experience in the field. The jury was instructed on how to consider "opinions based on [the witness's] specialized knowledge:"

> In deciding how much weight to give them, you should consider the witness's qualifications and how he or she reached conclusions. Also consider the other factors discussed in these instructions for weighing the credibility of witnesses. *Remember that you alone decide how much of a witness's testimony to believe and how much weight it deserves.*

Tr. Of Trial 65:21–66:1, ECF No. 679 (emphasis added).

The Sixth Circuit has held that such an instruction is adequate to guard against the risk of confusion inherent when a law enforcement agent testifies as both a fact and expert witness. *See Ham*, 628 F. 3d at 806 (citing *Lopez-Medina*, 461 F.3d at 744).

11

Finally, Michael Bracey's testimony reinforced Agent Lucas' interpretation of the slang terms.

West's claim of ineffective assistance of trial counsel on this ground fails.

2. **West contends trial counsel provided ineffective assistance by not requesting an exemplar of his voice to compare to the voices on the tapes purported to be his.**

West agreed to provide a voice exemplar, and stipulated that his voice is on the tape. This argument fails.

3. **West contends that trial counsel provided ineffective assistance by failing to investigate potential witnesses whose testimony would strengthen his defense.**

West says counsel was ineffective for failing to investigate three potential witnesses whose testimony would strengthen his case.

Defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *See Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003). To sufficiently plead ineffective assistance of counsel for failure to investigate, a defendant must show that the lack of investigation "actually had an adverse effect on the defense." *see Strickland*, 466 U.S. at 693.

West fails to sustain his burden. West fails to prove that trial counsel's failure prejudiced him within the meaning of *Strickland*.

West says Tanisha Shirley might have been present at the shooting scene and could have contradicted Lamont Shirley's testimony. Additionally, he says she could possibly identify faces in a police line-up that would raise doubt in front of the jury.

However, Shirley's testimony was not pertinent to West's case because West was not charged as a shooter.

West says Candace Brown, Freeman's girlfriend, would clarify who was referred to as "BUC" in her jail conversations with Freeman. However, West does not support his conclusion that Freeman's reference to "BUC" was not him. Furthermore, the omission of this testimony is not prejudicial to West because unlike in *Freeman*, in West's trial, "BUC" was not clearly indicated to the jury as Roy West. West fails to demonstrate that this testimony would have produced a different result, in light of the overwhelming evidence against West.

Finally, West says that Lamont Willis, the third individual, could have testified about Bracey's character and his jealousy toward West, and could have contradicted Bracey's testimony. However, Bracey's possible bias was demonstrated; West's counsel demonstrated to the jury that Bracey was testifying in exchange for a reduced sentence. West fails to show that Willis' testimony would have strengthened West's defense.

West says the testimony of these three "would further weaken the prosecution's case by providing contradictory testimony with impartiality that the prosecutions [sic] material witnesses lacked." Def.'s Mot. 68, ECF No. 804. However, the jury had been instructed to decide which witnesses to believe and how much to believe. Additionally, West's counsel effectively cross-examined Lamont Shirley and Bracey to show that they had received favor from the Government.

West's claim for ineffective assistance of trial counsel fails under this ground.

**4. West contends that trial counsel provided ineffective assistance by violating Fed. R. Crim. P 12(d) by failing to seek a court ruling concerning the impact the Ohio wiretap authorization had on the Michigan authorization.**

The record indicates West's trial counsel did exactly what West claims he failed to do: he filed a Motion to Suppress Wiretap Evidence, or, Alternatively for An Evidentiary Hearing (ECF No. 98). In that motion, counsel challenged the Ohio authorization to wiretap. Mot. to Suppress 3, ECF No. 98. This challenge fails.

**5. West contends trial counsel provided ineffective assistance by failing to investigate a causation defense.**

This claim lacks merit. The cause of Leonard Day's death is not pertinent to West's criminal charge. West was charged with the crime of conspiracy to use interstate facilities in the commission of a murder for hire. Day's cause of death was not an element of this offense. Counsel's performance was not deficient nor was West prejudiced by it.

**6. West contends his trial counsel was ineffective for failing to file a Rule 33 motion regarding Agent Peter Lucas's lay testimony.**

Fed. R. Crim. P 33 provides: "[u]pon the defendant's motion, the court may vacate judgment and grant a new trial if the interest of justice so requires." West claims trial counsel was ineffective for failing to file a Rule 33 motion to vacate his conviction based on the problem with Agent Lucas' testimony.

West fails to show how trial counsel's performance was deficient. After the verdict, West's counsel asked for an extension of time to consider whether to file a post-trial motion. Throughout West's trial, his attorneys went above and beyond to preclude Agent Lucas' improper opinion testimony, evidenced by the differences between Agent Lucas' testimony in Freeman's and in West's trial, and the explicit order of the trial court that Agent Lucas could not interpret phone conversations.

14

The Court finds that West's trial counsel made a strategic decision to not file a Rule 33 motion for new trial, but to simply file an appeal. Because West fails to show how trial counsel's performance was deficient, his claim of ineffective assistance of counsel on this ground fails.

## CONCLUSION

Defendant's Motion pursuant to 28 U.S.C. §2255 to vacate, set aside or correct his sentence is **DENIED**.

**IT IS ORDERED**.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: January 13, 2017

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 13, 2017.

s/Linda Vertriest
Deputy Clerk

---