UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                   Case No. 06-20185
                                                     Honorable Victoria A. Roberts

ROY WEST,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) [ECF No. 969]

## I.    INTRODUCTION

Roy West is in year 17 of a life without parole sentence.  The indictment and case submitted to the jury should have netted West not more than ten years in prison.

Errors on the part of competent people – prosecutors, defense counsel, probation officers and, ultimately, this judge at the time of sentencing – resulted in the imposition of a sentence in violation of the law on West. Even skilled appellate counsel failed to raise the sentencing error.

West has no way to correct this extraordinary and compelling error – and end his days in prison – but through his now pending motion for sentence reduction (compassionate release).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, opens an avenue for this Judge to correct a fundamentally unfair sentence that did not exist before.  Justice and faith in our judicial system demand correction for the benefit of Roy West.

This human error on multiple levels, the resulting sentencing disparity, the absence of any other avenue for relief, and West's extraordinary rehabilitation constitute extraordinary and compelling reasons for sentence reduction.  The 18 U.S.C. § 3553(a) factors support a sentence reduction as well.

The Court **GRANTS** West's motion.  [ECF No. 969].

## II.   BACKGROUND

A grand jury returned a first superseding indictment in June 2010 charging West with conspiracy to use interstate commerce facilities in the commission of murder for hire in violation of 18 U.S.C. § 1958.  West was tried twice on this charge.

The first time around, the jury failed to reach a verdict.  The Court declared a mistrial.  A second jury convicted West in April 2011.

On August 25, 2011, the Court imposed a life sentence on West.

The Sixth Circuit affirmed West's conviction on direct appeal. *United States v. West*, 534 Fed. Appx. 280 (6th Cir. 2013).  Thereafter, West filed

a motion for a new trial followed by a motion to vacate his sentence under 28 U.S.C. § 2255.  The Court denied both motions.

West filed this motion in June 2022.  In it, he raises for the first time an unmistakable sentencing error which everyone overlooked until now. The motion is fully briefed.

## III.   DISCUSSION

Section 3582(c)(1)(A) authorizes the Court to reduce a defendant's sentence if he demonstrates that: (1) "extraordinary and compelling reasons" warrant a reduction; (2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the relevant § 3553(a) factors support a reduction. *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)).  "Currently, no policy statement applies where a defendant (as opposed to the Bureau of Prisons) files a motion seeking a sentence reduction."  *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022).  Therefore, the Court "must deny a defendant's motion if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction."  *Id.*

West says an extraordinary and compelling reason for a sentence reduction is that the Court imposed a life sentence on him even though the

jury did not make a finding that death resulted from the conspiracy.  He says this violated his constitutional rights as set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

West also contends that his medical conditions, race, and age place him at a higher risk for serious illness from COVID-19.  Finally, West says that § 3553(a) factors – and in particular, the disparate sentences imposed on his co-defendants – support his request for relief.

The government opposes West's motion.  It says: (1) the evidence at trial overwhelmingly showed a causal link between West's conspiracy and Leonard Day's death, so any *Apprendi* violation was harmless; (2) even if West could overcome the harmlessness threshold, compassionate release is not a proper remedy for an *Apprendi* violation, and finding otherwise would allow prisoners to bypass the strictures of habeas law, effectively abrogating AEDPA's limitations on successive § 2255 motions; and (3) West fails to establish extraordinary and compelling reasons based on his medical conditions and risk from COVID-19.

## IV.   EXTRAORDINARY AND COMPELLING REASONS SUPPORT SENTENCE REDUCTION

### A.   This Court Imposed an Illegal Sentence on Roy West

The statute of conviction – 18 U.S.C. § 1958 – provides alternative, enhanced punishments:

(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, <u>with intent that a murder be committed</u> in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, <u>or who conspires to do so</u>, <u>shall be fined under this title or imprisoned for not more than ten years, or both</u>; and **if personal injury results**, <u>shall be fined under this title or imprisoned for not more than twenty years, or both</u>; and **if death results**, <u>shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both</u>.

18 U.S.C. § 1958(a) (emphasis added).

The first superseding indictment charged West with conspiring to travel in interstate commerce, and to use a facility of interstate commerce **with the intent to murder** Leonard Day. The indictment did not include any allegation that personal injury or death **actually** resulted from the conspiracy, and it did not charge West with any substantive count requiring the jury to decide if murder occurred. Indeed, in denying West's motion to vacate, the Court found that: "The cause of Leonard Day's death is not pertinent to West's criminal charge. West was charged with the crime of conspiracy to use interstate facilities in the commission of a murder for hire. Day's cause of death was not an element of this offense." [ECF No. 923, PageID.12302].

Moreover, as West points out, "The jury was not instructed that . . .
death was an element, nor was there any special finding[] by the jury that
the government proved beyond a reasonable doubt that there was a
death."  [ECF No. 969, PageID.12798].

Nonetheless, at sentencing, the Court noted: "[The Probation Officer]
concludes and everyone is in agreement that . . . the Court is bound to
impose a mandatory life sentence on Mr. West."  [ECF No. 682,
PageID.8190].  West did not object at sentencing, nor did he raise it on
appeal or in post-trial motions for relief.

West now argues that the life sentence violated *Apprendi*, and that
the *Apprendi* violation constitutes an extraordinary and compelling reason
for a sentence reduction under § 3582(c)(1)(A).

The Court agrees with West: imposition of a life sentence without
submitting the question of whether death resulted from the conspiracy to
the jury violated *Apprendi*, because: (1) § 1958(a) imposes three distinct
penalties; and (2) the alternatives under § 1958(a) are elements for
conviction that must be submitted to the jury and found beyond a
reasonable doubt.  *See Mathis v. United States*, 579 U.S. 500, 518 (2016)
("If statutory alternatives carry different punishments, then under *Apprendi*
they must be elements."); *Burrage v. United States*, 571 U.S. 204, 210

(2014) ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.").

The government argues that the *Apprendi* violation is harmless and not extraordinary and compelling.  *See United States v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008).

But the government relies on the incorrect standard for harmlessness.  The government says harmlessness may be found where the fact not submitted to the jury "was uncontested *or* was supported by overwhelming evidence."  [ECF No. 971, PageID.12898 (emphasis added)].  However, for an error to be found harmless, the actual standard requires that "the omitted element was 'uncontested *and* supported by overwhelming evidence.'"  *Kuehne*, 547 F.3d at 681 (emphasis added) (citation omitted).

While trial evidence may satisfy the overwhelming evidence prong, West contested that death resulted from the conspiracy.  Indeed, West presented substantial evidence related to Day's long criminal history in support of his defense that a party outside of the conspiracy caused Day's murder.  For example, he: (1) introduced evidence that a thief who robbed Day at gunpoint – and shot at Day while he ran away – might want him

dead; (2) "elicit[ed] testimony that various persons in the neighborhood did not like Day, that Day made himself a target for violence, and that people likely wanted him dead"; and (3) "informed the jury that Day was wanted for 'very serious crimes,' had been involved with illegal drugs, and was thought to be 'armed and dangerous.'" *See United States v. West*, 534 Fed. Appx. 280, 284 (6th Cir. 2013).

The error is far from harmless under *Kuehne*. Instead, it is extraordinary and compelling.

### 1. Finality in Judgments Cannot Trump Fundamental Fairness

The legal system has a strong interest in the finality of judgments. Indeed, most sentencing errors will likely not qualify as extraordinary and compelling reasons for sentence reduction which outweigh the interest in protecting finality of judgments. Courts have granted very few compassionate release motions based on sentencing errors. *See Compassionate Release: The Impact of the First Step Act and COVID-19 Pandemic*, U.S. Sentencing Comm'n (March 2022), at 31, 34, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220310_compassionate-release.pdf.

However, this case is far from typical, and the vehicle West relies upon for a sentence reduction is a statute whose very purpose is to reopen final judgments.  *Cf. Concepcion v. United States*, ____ U.S. ____, 142 S. Ct. 2389, 2399 n.3 (2022) ("No one doubts the importance of finality [of criminal judgments]. Here, however, the Court interprets a statute whose very purpose is to reopen final judgments.").  *See also United States v. Trenkler*, 47 F.4th 42, 48 (1st Cir. 2022) ("Compassionate release is a narrow exception to the general rule of finality in sentencing.").

### B.  West's Illegal Sentence Results in an Unwarranted Sentencing Disparity

Congress instructed courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Other defendants convicted of conspiracy to use interstate commerce facilities in the commission of murder for hire under § 1958 – without the "death results" or "personal injury results" enhancements – faced a statutory maximum sentence of ten years.

Furthermore, West's guideline range when scored and based on the offense of conviction was 121 to 151 months.  Therefore, even if there was not a ten-year statutory maximum, West would have faced a guideline

range that is less than the time he has already served – and far less than the life sentence imposed.

West's life sentence is significantly out-of-line with similarly situated defendants charged with conspiracy under § 1958.  The need to avoid this unwarranted, substantial sentencing disparity – and further the goals of Congress – constitutes an extraordinary and compelling reason to reduce West's sentence. § 3553(a)(6).

In making this finding, the Court acknowledges that the Sixth Circuit in *Hunter* held that facts that existed at sentencing cannot later be construed as extraordinary and compelling reasons to reduce a sentence, and that the sentencing disparities between Hunter and his co-defendants existed at sentencing.  *See Hunter*, 12 F.4th at 570.  Here, however, because of human error, the Court sentenced West as if the jury convicted him under the "death results" enhancement in § 1958.

At the time of sentencing, the Court was not presented with the ten-year statutory maximum or the 121-151 month guideline range since all presumed West faced a mandatory life sentence.  Unwarranted sentencing disparity was never raised as a consideration at sentencing.

### C.    West Has No Other Avenue of Relief Open to Him

The government argues that relief is not available under §

3582(c)(1)(A) because West's motion amounts to an unauthorized

successive § 2255 motion.  Importantly, the habeas route for a successive

petition is not available to West.  And if this Court declined to exercise the

discretion available to it, the last opportunity West has available to him for

freedom would be foreclosed.

The United States Supreme Court recently held, "[i]t is only when

Congress or the Constitution limits the scope of information that a district

court may consider in deciding whether, and to what extent, to modify a

sentence, that a district court's discretion to consider information is

restrained."  *Concepcion*, 142 S. Ct. at 2396.

Habeas is a distinctive vehicle for relief that deals with the legality

and validity of a conviction.  *Trenkler*, 47 F.4th at 48.  Habeas allows for the

automatic vacation of a sentence through legal-based arguments.

Compassionate release is different in purpose and scope.  It gives courts

significant discretion to exercise leniency based on the unique and

individualized circumstances of a defendant.  *Id.*

The Sixth Circuit placed its imprimatur on the discretion district courts

enjoy in considering motions for sentence reductions. It ruled that because

11

Congress has not defined what constitutes an "extraordinary and compelling reason" – except to state that rehabilitation alone may not be considered an extraordinary and compelling reason – district courts have discretion to freely determine what constitutes extraordinary and compelling reasons under § 3582(c)(1)(A). *See United States v. Elias*, 984 F.3d 516, 518-20 (6th Cir. 2021) ("Congress provided no statutory definition of 'extraordinary and compelling reasons,'" and "district courts have discretion to define 'extraordinary and compelling' on their own initiative").

West asks the Court to exercise its discretion broadly in his favor because he has no other options open to him. Failure to consider West's request would amount to an abuse of discretion and miscarriage of justice. The circumstances West raises are extraordinary and compelling reasons to reduce his sentence.

### D.    West's Rehabilitative Efforts

While Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," *Hunter*, 12 F.4th at 572 (quoting 28 U.S.C. § 994(t)), West's rehabilitative efforts are commendable, extraordinary, and strongly support reducing his sentence.

West earned his GED while in the BOP after taking a number of classes and adult education courses. He also completed courses in Drug Education, Basic Cognitive Skills, the National Parenting Program, Financial Planning, Speech, Etiquette, the Electoral College, the Study of the Winter Solstice, Money Management, Investment Choices, Marketing, Gold, Income Annuities, and Life Lessons.  Most recently, West completed a class for his commercial driver's license which would allow him to work as a truck driver if he passes a driving test.  In total, West has participated in a total of 236 educational and vocational hours, which does not include the 206 hours for the GED Prep Course.  West also has a consistent work history in prison.

West has maintained a close relationship with his children and grandchildren.  It is evident from the 15 letters of support family, friends, and fellow inmates submitted on his behalf, that West has a substantial support system.  The letters also demonstrate that West maintains a commitment to family, and they are a tribute to his continued efforts to live a better life, help and mentor others, and embrace rehabilitation.

West says that, if released, he plans to return to his community in Akron, Ohio – where his family lives and where he has two offers for employment.  West also says he is eligible for the South Street Ministries

Reentry Program – which assists those reintegrating into society in Akron (and the surrounding Summit County) to find secure housing, long-term employment, and reliable transportation.  South Street can have West employed as soon as three days after he returns to the community.

West's post-release plans and his rehabilitation while imprisoned are extraordinary and compelling.

## V.    THE § 3553 FACTORS SUPPORT A SENTENCE REDUCTION

Since West establishes extraordinary and compelling reasons, the Court considers the 18 U.S.C. § 3553(a) factors.

The Court begins with the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1).  A jury convicted West of conspiring to travel in interstate commerce and to use a facility of interstate commerce with the intent to murder Leonard Day.

The evidence showed that in November 2005, Day – wanted for murder in Detroit – stole about $100,000 in cash, $250,000 in jewelry, a gun, and car keys from West while hiding out at West's home in Akron, Ohio.  West organized and participated in a search for Day across state lines and offered money to others for Day's murder.

The details of West's crime show that the nature and circumstances of the offense were, without question, serious. 18 U.S.C. § 3553(a)(1).

14

The sentence must "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(A), (B).

The life sentence imposed does not satisfy these requirements. Because the "death results" enhancement under 18 U.S.C. § 1958 was not charged or submitted to the jury, the conviction carried a statutory maximum penalty of ten years.  Importantly, "[a] sentence that is too harsh undermines respect and confidence in the criminal justice system just as does a sentence that is too lenient. And the sentence here actually works an injustice."  *See United States v. McDonel*, 513 F. Supp. 3d 752, 759 (E.D. Mich. 2021).

Based on West's conviction, a sentence of ten years would be sufficient to achieve the goals under § 3553(a)(2)(A) and (B).  Nearly seven years beyond that is greater than necessary to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct."

Finally, the remaining relevant factors – i.e., the "history and characteristics of the defendant" and the need "to protect the public from further crimes of the defendant" – support a sentence reduction.

At the age of eleven, West's older brother – his father figure – was murdered in his presence. That traumatic experience had an adverse impact on West's schooling, his maturity, and mental health.

Despite this, West does not have an extensive criminal history.  Per his Presentence Investigation Report, West had one criminal history point – which was for a domestic violence offense in 1998.

West has a relatively clean BOP disciplinary record. He has been in custody since 2006.  His record has three incidents: fighting with inmates in January 2007; verbal insolence in August 2011; and possessing a dangerous weapon in June 2014.  Over the past eight years, West has been a model prisoner, with no disciplinary infractions. Notably, BOP records indicate that West is classified as "Low Risk Recidivism Level."

The relevant § 3553(a) factors support reducing West's sentence.

## VI.   WEST'S ARGUMENTS REGARDING COVID-19 AND HIS HEALTH CONDITIONS DO NOT CONSTITUTE EXTRAORDINARY AND COMPELLING REASONS FOR SENTENCE REDUCTION

West is a 47-year-old black male.  He says extraordinary and compelling reasons warrant his release because his age, race, and medical conditions (i.e., obesity, hypertension, and pre-diabetes) place him at higher risk for serious illness from COVID-19.

Under Sixth Circuit precedent, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). West's medical records show that he received Pfizer's two-dose COVID-19 vaccine in spring 2021. Although West has not received the booster, booster shots are available from the Bureau of Prisons ("BOP") upon request. *See United States v. Butler*, No. 18-20256, 2022 WL 1617999, at *2 (E.D. Mich. May 23, 2022).

Moreover, at the time the government filed its response (i.e., June 30, 2022), there was only one reported case of COVID-19 at West's facility – USP Big Sandy. As of September 30, 2022, the BOP reports that no inmates at USP Big Sandy have COVID-19. *See* https://www.bop.gov/coronavirus/index.jsp.

West fails to demonstrate his health conditions and COVID-19 constitute extraordinary and compelling reasons for release.

## VII. THE COURT WILL NOT STAY THE ENFORCEMENT OF THIS ORDER

The government asks the Court to stay any order granting West's motion through the completion of appellate proceedings.

17

The party requesting a stay bears the burden to show that the circumstances justify a stay.  *United States v. Bass*, 843 Fed. Appx. 733, 734 (6th Cir. 2021).  The Court "balance[s] four factors to determine whether a stay is appropriate: (1) whether the government has made a strong showing that it is likely to succeed on the merits; (2) whether the government will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other interested parties; and (4) where the public interest lies."  *Id.* (citation and internal quotation marks omitted). The Court may consider any danger a defendant might pose to the public if released, and the government's interest in continuing custody pending a decision on the merits of an appeal.  *Id.*

The government fails to satisfy its burden to show a stay is necessary.  Indeed, the sentencing error is extraordinary and compelling. The maximum sentence West's conviction carried was ten years; yet, he has already served nearly 17 years. This is more than sufficient to achieve the goals under § 3553(a).  West does not pose a specific risk to the public. The balance of the four factors weighs against granting a stay.

The Court declines the government's request to stay enforcement of this order pending an appeal.

## VIII.  CONCLUSION

In *Koon v. United States*, 518 U.S. 81, 113 (1996), the Supreme Court held that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  This admonishment and duty pertain at sentencing modification hearings as well.  *Pepper v. United States*, 562 U.S. 476, 490 (2011).  Federal judges may conduct inquiries broad in scope, "largely unlimited either as to the kind of information [s]he may consider, or the source from which it may come."  *United States v. Tucker*, 404 U.S. 443, 446 (1972).

That discretion is not unfettered.  *Hunter*, 12 F.4th at 562.  And although § 3582 does not define "extraordinary and compelling," courts must give those words their "ordinary meaning at the time Congress enacted the statute."  *Id.* (citation omitted).  When Congress enacted § 3582, "extraordinary" meant "most unusual," "far from common," and "having little or no precedent" and "compelling" meant "forcing, impelling, driving."  *Id.* (citations omitted).

The circumstances of this case are far from common and are most unusual.  The government failed to properly charge West with the "death

results" enhancement under § 1958; trial counsel failed to submit a verdict form for the jury to answer the death question; the Probation Department erroneously concluded that the conviction carried a mandatory life sentence; and this Judge did not notice that the "death results" enhancement was not submitted to the jury.  The guideline range based on what West was indicted for and convicted of was 121 to 151 months, restricted to 120 months based on the ten-year statutory maximum sentence.  *See* U.S.S.G. § 5G1.1(a).  Defense counsel failed to raise the sentencing error on appeal or in a habeas petition.  The circumstance is extraordinary.

This Court's clear sentencing error is a compelling reason for sentence reduction.  It is the only reason West is still behind bars and not a free citizen.

Allowing the sentence to stand would undermine respect for and trust in the judicial process.  Uncovering the error required no investigation, fact-finding or credibility determinations.  The error does not turn on the retroactive application of a new legal principle. *Apprendi* and its holding were well established at the time of sentencing, and it is clear from the plain language of the statute that § 1958 contains statutory alternatives with different punishments which constitute elements that must be submitted to

20

the jury.  The error should have been apparent from the face of the indictment and § 1958.

Moreover, the need to avoid unwarranted sentencing disparities, West's commendable rehabilitative efforts, and the relevant § 3553(a) factors all strongly support sentence reduction.

Finally, West has not previously raised this challenge – so no court has reviewed it – and if this Court does not review the error now, West will have no other avenue for correction. Without this remedy, West will spend the rest of his life in prison.  A true miscarriage of justice.

The Court concludes there are "extraordinary and compelling reasons" for sentence reduction, all supported by § 3553(a) factors.

The Court:

(1) **GRANTS** West's motion for sentence reduction [ECF No. 969];

(2) **REDUCES** his sentence to time served; and

(3) **REDUCES** the originally imposed supervised release term from five years to three.

The other terms and conditions of West's original sentence remain unchanged.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
Dated: 11/7/2022                              United States District Judge