UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                  Case No. 06-cr-20185-1
v.                                Hon. Matthew F. Leitman

D1, ROY CHRISTOPHER WEST,

    Defendant.

_____/

## ORDER (1) DENYING DEFENDANT'S AMENDED MOTION FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND (d) (ECF No. 985); (2) DENYING DEFENDANT'S RENEWED MOTION FOR BOND (ECF No. 1026); AND (3) GRANTING CERTIFICATE OF APPEALABILITY

In 2006, a federal grand jury charged Defendant Roy West with committing a criminal offense for which the maximum sentence was ten years in prison. Five years later (after an initial mistrial), a trial jury convicted West of the ten-year offense as charged. At sentencing, however, the judge who was then presiding over the case imposed a sentence of life imprisonment. The judge imposed that sentence based upon the erroneous belief – shared at the time by the prosecutor, West's defense attorney, and the assigned probation officer – that the indictment had charged, and the trial jury had found beyond a reasonable doubt, a sentencing enhancement that required a life sentence. In fact, the indictment did not charge the enhancement, and the jury did not find that it had been proven beyond a reasonable

doubt.  Thus, the imposition of a life sentence here was clear constitutional error.
*See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a
prior conviction, any fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a reasonable
doubt."); *id.* at 483 n.10 ("The judge's role in sentencing is constrained at its outer
limits by the facts alleged in the indictment and found by the jury.")

West did not raise the *Apprendi* error in his direct appeal.  Nor did he raise it
in a motion that he filed to vacate his sentence under 28 U.S.C. § 2255 (the "Section
2255 Proceedings").  Instead, West raised the *Apprendi* error for the first time in a
motion for compassionate release that he filed in 2022, eleven years after he was
sentenced.  The judge then presiding over West's case granted him compassionate
release, but the United States Court of Appeals for the Sixth Circuit thereafter
reversed on the ground that an *Apprendi* error was not a basis for compassionate
release.

Now before the Court is West's Amended Motion for Relief From Judgment
under Federal Rule of Civil Procedure 60(b) and (d). (*See* Am. Mot., ECF No. 985.)
In that motion, he asks the Court to (1) vacate the judgment that was entered against
him in the Section 2255 Proceedings (the "2255 Judgment") and (2) allow him to
assert his claim of *Apprendi* error in re-opened proceedings under Section 2255. (*See
id.*)  The Court reluctantly concludes that it may not do so.  As explained in detail

2

below, West is not entitled to relief from the 2255 Judgment because the *Apprendi* claim that he seeks to assert in the re-opened proceedings is time-barred.  And it is well-established that a district court should not set aside a judgment under Rule 60 to permit a moving party to assert a claim, like West's claim of *Apprendi* error here, that fails as a matter of law.  The Court therefore **DENIES** West's motion.

At the risk of understatement, the Court notes that West's case is deeply troubling.  So many people who were supposed to catch the obvious *Apprendi* error – and to protect West – missed it.  As a result, West will serve the rest of his life in federal custody even though a jury convicted him of committing only a ten-year offense.  But because the Government has a winning statute of limitations defense, the Court may not re-open the Section 2255 Proceedings and consider the *Apprendi* claim on the merits.  That seems to be an awfully high price to pay for the value of finality served by the statute of limitations.

## I

## A

Before providing a recitation of the facts and procedural history of West's case, the Court begins with a brief overview of the statute under which West was charged and convicted.  That overview helps to explain the *Apprendi* error that occurred at West's sentencing.

The Government charged West with conspiracy to use interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958. (*See* Superseding Indictment, ECF No. 433, PageID.3495.)  Section 1958 provides:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both[.]

18 U.S.C. § 1958(a).

Section 1958 also contains a sentencing enhancement provision.  Under that provision, "if death results" from the murder-for-hire conspiracy, then the offense "shall be punished by death or life imprisonment" (the "Death Results Enhancement"). *Id.*  Critically, because the Death Results Enhancement "imposes [a] distinct enhanced penalt[y]," it is an "element[] for conviction that must be proven to the jury beyond a reasonable doubt under *Apprendi*." *United States v. Runyon,* 994 F.3d 192, 202 (4th Cir. 2021); *see also United States v. Pena,* 58 F.4th 613, 622 (2d Cir. 2023) ("Whether death resulted is a fact that triggered a higher mandatory minimum sentence [under Section 1958(a)], and the district court erred by not instructing the jury to make a finding as to this fact if it determined that" the

defendant was guilty of entering into a murder-for-hire conspiracy.); *Burrage v. United States*, 571 U.S. 204, 210 (2014) (holding that pursuant to *Apprendi*, a similar "death results" sentencing enhancement in another federal criminal statute, 21 U.S.C. § 841, had to be submitted to the jury and found by the jury beyond a reasonable doubt).  Likewise, *Apprendi* requires that the Death Results Enhancement be charged in the indictment before a defendant may be sentenced to life imprisonment under the enhancement. *See Apprendi*, 530 U.S. at 483 n.10.

## B

In 2006, a grand jury returned an indictment alleging that West violated Section 1958 by entering into a conspiracy for the murder-for-hire of Leonard Day. (*See* Indictment, ECF No. 1.)  The grand jury later returned a superseding indictment accusing West of committing the same crime. (*See* Superseding Indictment, ECF No. 433.)  Neither the indictment nor the superseding indictment charged the Death Results Enhancement. (*See id.*)

While neither indictment charged the Death Results Enhancement, the Government contended at trial that Day's death did result from the charged conspiracy.  The Government told the jury that West's co-conspirators "killed Leonard Day; that they killed him for Roy West and that they did it for money." (4/12/2011 Trial Tr., ECF No. 680, PageID.8117.)  West denied entering into a

5

conspiracy to kill Day.  He further argued that Day was killed by a third party, not by any of the alleged conspirators. (*See, e.g., id.*, PageID.8162, 8164.)

Like both of the indictments, neither the instructions to the jury nor the verdict form mentioned the Death Results Enhancement, let alone asked the jury to find whether the Government had proven the Death Results Enhancement beyond a reasonable doubt. (*See* 4/11/2011 Trial Tr., ECF No. 679, PageID.8105-8108; Verdict Form, ECF No. 597.)  The jury ultimately convicted West as charged – *i.e.*, of committing the offense of conspiracy to commit murder-for-hire. (*See* Verdict Form, ECF No. 597.)   As noted above, the maximum sentence for that offense is ten years in prison. *See* 18 U.S.C. § 1958(a).

At sentencing, the then-presiding judge, the parties, and the probation officer who prepared the pre-sentence investigation report all "agree[d]" – erroneously – that a life sentence was mandatory. (8/25/2011 Sentencing Hr'g Tr., ECF No. 682, PageID.8190-8191.)  As a result, West was sentenced to life imprisonment (*see* Judgment, ECF No. 637, PageID.6613) – the mandatory minimum sentence that applies where the Death Results Enhancement is charged and found by a jury beyond a reasonable doubt. *See* 18 U.S.C. § 1958(a).  As even the Government now acknowledges, West's sentence violates *Apprendi* because the Death Results Enhancement was neither charged nor found beyond a reasonable doubt by the jury. (*See* Resp. to Mot. for Bond, ECF No. 1027, PageID.13506.)

C

After sentencing, West, through new appellate counsel, filed a direct appeal to the Sixth Circuit.  In that appeal, West did not raise a claim of *Apprendi* error, nor did he otherwise challenge his sentence as being erroneously based upon the Death Results Enhancement.

But West did present an argument related, to some extent, to the cause of Day's death.  He argued that "the district court violated his right to present a defense by excluding evidence of third-party culpability—evidence that some third-party outside of the conspiracy may have been guilty of Day's murder." *United States v. West*, 534 F. App'x 280, 283 (6th Cir. 2013).  The Sixth Circuit rejected that argument.  It concluded that the district court "gave West significant latitude in admitting evidence" and that West had a "large body of evidence and testimony available for his defense to show that persons other than himself likely wanted to kill Day." *Id.* at 284.  The Sixth Circuit then rejected the remainder of West's arguments and affirmed his conviction.

West then filed a petition for a writ of certiorari to the United States Supreme Court. (*See* Letter, ECF No. 760.)  The Supreme Court denied the petition on December 9, 2013 (*see* Letter, ECF No. 774), and West's conviction became final on that day. *See Clay v. United States*, 537 U.S. 522, 527 (2003).

7

**D**

On December 8, 2014, West filed a motion to vacate his sentence under 28 U.S.C. § 2255 (the "2255 Motion"). (*See* 2255 Mot., ECF No. 804.)[1] Section 2255 is commonly understood to "afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974); *see also Jones v. Hendrix*, 599 U.S. 465, 472 (2023) ("Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners.")

In the 2255 Motion, West did not claim that his life sentence violated *Apprendi*. Instead, West raised a number of other claims, including that there was insufficient evidence to support his conviction, that the district court abused its discretion when it permitted one witness to testify as both a fact and expert witness without a cautionary instruction to the jury, and several ineffective assistance of counsel claims.

In his final claim in the 2255 Motion, West argued that his trial counsel was ineffective for failing to investigate a causation defense (the "Ineffective Assistance

---

[1] The docket reflects that West's 2255 Motion was filed on December 16, 2014. Under the "prison mailbox rule," a "pro se prisoner's [motion] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). That date is assumed, absent contrary evidence, to be the date that the prisoner signed the document. *See id.* The certificate of service at the end of the 2255 Motion is dated December 8, 2014. (*See* 2255 Mot., ECF No. 804, PageID.10674.)

– Causation Claim"). (2255 Mot., ECF No. 804, PageID.10672-10674.)   More specifically, West contended that his trial counsel should have investigated "the manner in which" Day had died to "determine whether the physicians who treated . . . Day might have been guilty of gross medical negligence" or whether "Day died due to the length of time it took for the Detroit Paramedics to reach him." (*Id.*, PageID.10673.)   West further argued that his trial counsel should have investigated "[w]hether Day had a heart condition, that his blood showed levels of marijuana and cocaine[.]" (*Id.*)   Simply put, West argued that his trial counsel should have investigated and attempted to show that even if Day had been shot by one of West's co-conspirators, Day's cause of death was not the shooting, but was, instead, some intervening cause such as the negligence of the medical professionals who treated Day after the shooting, Day's health problems, or both.

On April 17, 2015, the Government filed a response in opposition to the 2255 Motion. (*See* Resp. to 2255 Mot., ECF No. 842.)   As relevant here, the Government argued that the Ineffective Assistance – Causation Claim failed because West's argument that his trial counsel should have investigated "whether the physician who treated Day committed gross negligence" seemed "to confuse his case with the burden of proof in a civil case." (*Id.*, PageID.11577.)   The Government added that, in any event, there was no real dispute as to the cause of Day's death because the

autopsy report "included the manner of death as homicide," and West stipulated to the contents of that report. (*Id.*)

The Government then contended that West's Ineffective Assistance – Causation Claim failed for an additional – and "more important[]" – reason. (*Id.*) According to the Government, West failed to show that his trial counsel performed deficiently in failing to investigate and present a lack-of-causation defense because that defense would have been "inapplicable, frivolous and irrelevant to the offense charged." (*Id.*, PageID.11577-11578.) The Government insisted that the defense did not apply because the cause of Day's death was not an element of the conspiracy offense for which West was convicted. (*See id.*, PageID.11577, identifying elements of the conspiracy offense). The Government did not point out that West was sentenced as if the jury had found the Death Results Enhancement beyond a reasonable doubt.

On January 13, 2017, the then-presiding district judge rejected all of West's claims and denied the 2255 Motion. *See United States v. West*, No. 06-20185, 2017 WL 130286, at *7 (E.D. Mich. Jan. 13, 2017). With respect to the Ineffective Assistance – Causation Claim, the judge agreed with the Government that "[t]he cause of Leonard Day's death is not pertinent to West's criminal charge. West was charged with the crime of conspiracy to use interstate facilities in the commission of a murder for hire. Day's cause of death was not an element of this offense. Counsel's

10

performance was not deficient nor was West prejudiced by it." *Id.*   The 2255

Judgment was entered on April 3, 2018. (2255 Judgment, ECF No. 940.)

West thereafter filed a Notice of Appeal from the 2255 Judgment, and the

Sixth Circuit construed the Notice as an application for a certificate of appealability.

(*See* Sixth Circuit Order, ECF No. 943.)   The Sixth Circuit declined to issue such a

certificate and declined to permit West to appeal from the 2255 Judgment. (*See id.*)

**E**

Nearly four years later, in June 2022, West filed a motion for compassionate

release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Compassionate Release

Motion"). (*See* Compassionate Release Mot., ECF No. 969.)   In the Compassionate

Release Motion, West argued for the first time that his sentence violated the rule

stated in *Apprendi* because the Death Results Enhancement was not submitted to the

jury and the jury did not find the Death Results Enhancement beyond a reasonable

doubt. (*See id.*, PageID.12798-12800.)   West contended that the imposition of an

illegal life sentence in violation of *Apprendi* was an extraordinary and compelling

circumstance warranting compassionate release.   The then-presiding judge agreed

and granted West compassionate release. *See United States v. West*, No. 06-20185,

2022 WL 16743864 (E.D. Mich. Nov. 7, 2022).   In the order granting that relief, the

judge observed:

11

Roy West is in year 17 of a life without parole sentence. The indictment and case submitted to the jury should have netted West not more than ten years in prison.

Errors on the part of competent people – prosecutors, defense counsel, probation officers and, ultimately, this judge at the time of sentencing – resulted in the imposition of a sentence in violation of the law on West. Even skilled appellate counsel failed to raise the sentencing error.

West has no way to correct this extraordinary and compelling error – and end his days in prison – but through his now pending motion for sentence reduction (compassionate release).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, opens an avenue for this Judge to correct a fundamentally unfair sentence that did not exist before. Justice and faith in our judicial system demand correction for the benefit of Roy West.

This human error on multiple levels, the resulting sentencing disparity, the absence of any other avenue for relief, and West's extraordinary rehabilitation constitute extraordinary and compelling reasons for sentence reduction. The 18 U.S.C. § 3553(a) factors support a sentence reduction as well.

*Id.* at *1.

On appeal, the Sixth Circuit reversed the grant of compassionate release. *See United States v. West*, 70 F.4th 341 (6th Cir. 2023). The Sixth Circuit concluded that the judge erred in granting that relief because she "improperly used compassionate release as a vehicle for [what should have been] second or successive § 2255 motions." *Id.* at 343.

12

**F**

After the Sixth Circuit reversed the grant of compassionate release, West filed several motions for relief from the 2255 Judgment under Rule 60(b) and (d) of the Federal Rules of Civil Procedure. (*See* Mots., ECF No. 979, 980, 985.)  In his final motion seeking that relief (*see* ECF No. 985, the "Rule 60(b) Motion"), West argues that the 2255 Judgment should be vacated, that the Section 2255 Proceedings should be re-opened, and that in the re-opened proceedings, he should be permitted to assert his *Apprendi* claim.  In the alternative, West asks the Court to set aside the 2255 Judgment and enter judgment in his favor.  As relevant here, West contends he is entitled to relief from the 2255 Judgment under Rule 60(b)(6) for two independent reasons: (1) because the Government committed fraud on the Court in the 2255 Proceedings and (2) because the erroneous imposition of a life sentence under the circumstances here was an extraordinary error with extraordinary consequences.[2] (*See id.*, PageID.13060-13064.)

In 2023, the then-presiding judge reviewed the Rule 60(b) Motion and determined that it was a second or successive motion for relief under Section 2255 and that it therefore had to be transferred to the Sixth Circuit. *See United States v.*

---

[2] West also argued that he was entitled to relief under Rule 60(b)(4), (b)(5), (d)(1), and (d)(3). (*See* Rule 60(b) Mot., ECF No. 985.)  As discussed below, the Sixth Circuit remanded the case for consideration only under Rule 60(b)(6). *See In re West*, 103 F.4th 417, 420 (6th Cir. 2024).

*West*, No. 06-20185, 2023 WL 5624625 (E.D. Mich. Aug. 30, 2023).  Following that

transfer, the Sixth Circuit reviewed the Rule 60(b) Motion and concluded that it was

not a second or successive motion under Section 2255. *See In re West*, 103 F.4th

417, 420 (6th Cir. 2024).  The Sixth Circuit said that the two grounds on which West

sought relief in the Rule 60(b) Motion – described immediately above – "are bona

fide Rule 60(b) arguments, not habeas claims in disguise, and should be considered

as such." *See id.* at 420 (citing *Buck v. Davis*, 580 U.S. 100, 123 (2017)).  The Sixth

Circuit then remanded the Rule 60(b) Motion and directed this Court to "consider"

the motion "under Rule 60(b)." *Id.*

Now before this Court for decision is West's Rule 60(b) Motion (ECF No.

985) and a Renewed Motion for Bond (ECF No. 1026) that West filed following

remand.  The Court held hearings on the motions on December 10, 2024 and May

12, 2025.  The Court is now prepared to rule on the motions.

## II

## A

As noted above, West seeks relief from the 2255 Judgment under Rule 60(b).

That rule provides that:

> On motion and upon such terms as are just, the court may
> relieve a party or a party's legal representative from a final
> judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence
> could not have been discovered in time to move for a new

trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment[.]

Fed. R. Civ. P. 60(b). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

"[R]elief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). "This is especially true in an application of subsection (6) of Rule 60(b), which applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Id.* (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). "Consequently, courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity

mandate relief.'" *Id.* (quoting *Olle*, 910 F.2d at 365). "Such circumstances will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).[3]

## B

A party seeking relief from judgment under Rule 60(b) must generally show that he would have a meritorious claim or defense if the judgment he attacks is vacated and the underlying proceedings are thereafter re-opened. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2857 (3d ed.) ("The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b) with a scrupulous regard for the aims of finality. . . . [and] have prevented the needless protraction of litigation by requiring the moving party to show a good claim or defense."). Indeed, "[a] precondition of relief from a judgment is that the movant must show that he or she has a meritorious claim or defense. The moving party must convince the court that vacating the judgment will not be an empty exercise." 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.24 (2025) (internal quotation marks omitted). A movant need not "establish that

---

[3] While *Gonzalez* involved habeas proceedings under 28 U.S.C. § 2254, its admonition that Rule 60(b) relief will "rarely" be available in "the habeas context" applies to motions under the rule seeking relief from judgments entered under Section 2255 as well. *See, e.g., In re West*, 103 F.4th at 419 (applying *Gonzalez's* "rarely occur" language in the context of a Rule 60(b) motion seeking to set aside a judgment entered in Section 2255 proceedings); *Rouse v. United States*, 14 F.4th 795, 799 (8th Cir. 2021) (same).

[he] has an ironclad claim" on which success is "guarantee[d]" in order to satisfy the meritorious claim standard. *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 21 (1st Cir. 1992). But a claim that necessarily fails as a matter a matter of law is insufficient to warrant relief from judgment under Rule 60(b).

The Supreme Court confirmed that point in *Buck v. Davis*, 580 U.S. 100, 126 (2000). In *Buck*, a habeas petitioner brought a motion under Rule 60(b) to set aside the judgment that had been entered denying his original petition. He sought to assert a claim of ineffective assistance of counsel in re-opened habeas proceedings. But his ability to assert that claim depended on whether a line of Supreme Court cases – decided after entry of the judgment denying his habeas petition – would apply to the ineffective assistance claim if the judgment was set aside and the habeas proceedings were re-opened. *See id.* at 779–80. The Supreme Court said that if those later-decided cases would not apply – *i.e.*, if the claim that the petitioner wished to assert in the re-opened habeas proceedings would fail as a matter of law – then "Rule 60(b)(6) relief would be inappropriate." *Id.* at 780. As support for that conclusion, the Supreme Court cited the observation from Wright & Miller, *supra*, § 2857, that "a good claim or defense" is a precondition of Rule 60(b)(6) relief. *Id.*

The Sixth Circuit has likewise explained that a movant must "demonstrate" that "he has a meritorious defense" in order to be eligible for relief under Rule 60(b).

*Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156, 1160 (6th Cir. 1980) (addressing

motion under Rule 60(b)(1)). *See also Miller v. Mays*, 879 F.3d 691, 702 (6th Cir.

2018) ("[T]he weakness of the underlying ineffective-assistance claim [is]

'important' in finding that the equities weigh[] against reopening the case." (quoting

*Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 673 (6th Cir.

2015))). And myriad other federal courts have likewise recognized the "invariable

rule" that "as a precondition to relief under Rule 60(b), [the moving party] must give

the trial court reason to believe that vacating the judgment will not be an empty

exercise. . . . that it possesses a potentially meritorious claim or defense which, if

proven, will bring success in its wake." *Teamsters*, 953 F.2d at 20–21.[4]

### III

West is not entitled to relief from the 2255 Judgment under Rule 60(b)(6)

because the *Apprendi* claim that he seeks to assert in re-opened Section 2255

---

[4] *See also Cox v. Horn*, 757 F.3d 113, 124–25 (3d Cir. 2014) ("It is appropriate for a district court, when ruling on a Rule 60(b)(6) motion where the merits of the ineffective assistance claim were never considered prior to judgment, to assess the merits of that claim. . . . A court need not provide a remedy under 60(b)(6) for claims of dubious merit[.]"); *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990) ("Under all the provisions of Rule 60(b), a threshold condition for granting the relief is that the movant demonstrate that granting that relief will not in the end have been a futile gesture, by showing that she has a meritorious defense or claim."); *Pease v. Pakhoed Corp.*, 980 F.3d 995, 998 (5th Cir. 1993) ("It is well established that Rule 60(b) requires the movant to demonstrate that he possesses a meritorious cause of action."); *Lepkowski v. U.S. Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986) ("[M]otions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense[.]").

proceedings is not viable. More specifically, for the reasons explained below, the claim is barred by the applicable statute of limitations.

## A

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which imposed a one-year statute of limitations on claims brought under Section 2255. *See* 28 U.S.C. § 2255(f); *Mayle v. Felix*, 545 U.S. 644, 654 (2005). "Because the statute of limitations is an affirmative defense, the burden is on the [Government] to show that the statute of limitations has run. If the [Government] meets this requirement[,] then the burden shifts to [West] to establish an exception to the statute of limitations." *Campbell v. Grand Truck W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

## B

The Government has carried its burden of showing that the one-year statute of limitations in Section 2255(f) has run on West's *Apprendi* claim. (*See* Resp. to Renewed Bond Mot., ECF No. 1027, PageID.13509-13518.) The parties agree that the limitations period began to run on the date that West's judgment of conviction became final: December 9, 2013. (*See* Renewed Mot. for Bond, ECF No. 1026, PageID.13481; Resp., ECF No. 1027, PageID.13509.) The period thus expired on December 9, 2014. As the Government notes, and as the Sixth Circuit previously recognized, West raised his claim of *Apprendi* error "for the first time" in his

Compassionate Release Motion that he filed on June 17, 2022 – several years after the limitations period expired. *United States v. West*, 70 F.4th 341, 343 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 1010 (2024).[5] The Government has therefore carried its burden of showing that West's *Apprendi* claim is barred by the statute of limitations. Accordingly, the burden shifts to West to establish an exception to the statute of limitations.

C

West has failed to show that his *Apprendi* claim falls within any exception to the statute of limitations. He argues that the claim is not barred by the statute of limitations for six reasons: (1) the *Apprendi* claim relates back to the Ineffective Assistance – Causation Claim in his 2255 Motion; (2) the prior judge's order granting compassionate release was a new judgment that reset the time to file a motion under Section 2255; (3) the Government is equitably estopped from raising the statute of limitations; (4) the statute of limitations should be equitably tolled; (5) he is actually innocent; and (6) the Government waived the statute of limitations

---

[5] In a Sixth Circuit decision in a later appeal by West, the court said that West had been seeking relief from the *Apprendi* error since the time that he first filed a motion under Section 2255. *See United States v. West*, 104 F.4th 417, 419 (6th Cir. 2024). The Court believes that the Sixth Circuit's first decision more accurately reflects the procedural history of this case. While West has been seeking relief from his conviction since the time that he filed his initial motion under Section 2255, the first time that he sought relief from his sentence *on the basis of the* Apprendi *error* was in the Compassionate Release Motion that he filed on June 17, 2022.

20

defense.  While these arguments are serious and thoughtfully presented, they fail to establish that the statute of limitations does not bar the *Apprendi* claim.  The Court addresses each of West's arguments below.

## 1

West first contends that under Rule 15(c) of the Federal Rules of Civil Procedure, his *Apprendi* claim is not time-barred because it relates back to the timely-filed Ineffective Assistance – Causation Claim in his original 2255 Motion. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13482-13485.)   The Court disagrees.

### a

Rule 15(c)(1) provides that an amendment to a complaint "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  A claim that relates back is "timely even though it was filed outside of an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

The Supreme Court has "narrowly interpreted the phrase 'conduct, transaction, or occurrence' in [the] habeas context." *Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023).  In light of that narrow construction, "[a] prisoner cannot assert merely that the claims in the original and amended petitions all relate to the

21

same trial or conviction." *Id.* Rather, "the original and amended petitions [must] state claims that are tied to a common core of operative facts[.]" *Mayle v. Felix*, 545 U.S. 644, 664 (2005). To relate back, any "'new' facts generally may differ only in specificity (not in kind) from those originally alleged." *Watkins*, 57 F.4th at 581 (quoting *Cowan v. Stovall*, 645 F.3d 815, 819 (6th Cir. 2011)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

**b**

The *Apprendi* claim does not relate back to the Ineffective Assistance – Causation Claim because the two claims do not share a common core of operative facts. On the contrary, the *Apprendi* claim is "a new ground for relief" that is "supported by facts that differ in both time and type" from the facts supporting the Ineffective Assistance – Causation Claim. *Id.*

First, the facts supporting each respective claim relate to different time periods. The *Apprendi* claim turns on what happened at West's sentencing – when the then-presiding judge imposed a life sentence even though West had not been convicted of an offense carrying such a sentence. Indeed, the error underlying the *Apprendi* claim did not exist until the sentencing, and the error affects only West's sentence, not his conviction. In sharp contrast, the Ineffective Assistance –

22

Causation Claim relates to the conduct of West's trial counsel during the guilt phase of the trial – long before the sentencing proceedings at which the *Apprendi* error occurred.

Second (and on a closely-related note), the *Apprendi* claim and the Ineffective Assistance – Causation Claim are directed at different alleged errors. The *Apprendi* claim attacks the length of West's sentence. The Ineffective Assistance – Causation Claim attacked the validity of West's conviction. (*See* 2255 Mot., ECF No. 804, PageID.10674.[6])

Third, a different actor is alleged to have committed the errors underlying each claim. West claims that the then-presiding judge committed the *Apprendi* error when she imposed a life sentence even though West had not been convicted of the Death Results Enhancement. In contrast, he alleges that his trial counsel committed the error underlying the Ineffective Assistance – Causation Claim when he failed to present at trial evidence that Day may have died from poor medical treatment or underlying conditions at the scene of the shooting.

Finally, the substance of the key facts underlying the two claims are materially different. The *Apprendi* claim rests on four essential facts: (1) the indictment

---

[6] In the introduction to his 2255 Motion, West said that he was moving to "vacate, set aside, or correct his sentence" under Section 2255. (*See* 2255 Mot., ECF No. 804, PageID.10603.) But that language merely parrots the text of Section 2255. Nowhere in West's motion did he attack the validity of his sentence.

charged conspiracy to use interstate commerce facilities in the commission of murder-for-hire but did not allege the Death Results Enhancement (*see* Superseding Indictment, ECF No. 433); (2) the jury instructions on the conspiracy charge did not mention the Death Results Enhancement (*see* 4/11/2011 Trial Tr., ECF No. 679, PageID.8105-8106); (3) the jury was not asked to find, and did not find, that the Government proved the Death Results Enhancement beyond a reasonable doubt (*see* Verdict Form, ECF No. 597); and (4) the judgment of sentence imposed a term of life imprisonment (*see* Judgment, ECF No. 637, PageID.6613).   The Ineffective Assistance – Causation Claim, on the other hand, rests on a separate set of facts.  As presented by West, that claim turns upon, among other facts, (1) the steps, if any, that West's trial counsel took to investigate whether Day died from the shooting or as a result of negligent medical treatment from first responders and treating physicians; (2) the actual medical care provided by first responders and treating physicians; and (3) whether Day would have survived the shooting if he had received different care.

Given all of these substantial differences in the factual underpinnings of West's *Apprendi* claim and his Ineffective Assistance – Causation Claim, the former claim does not relate back to the latter. *See Watkins*, 57 F.4th at 581 (holding that proposed amended claims did not relate back to claims in original habeas petition where the amended claims alleged errors "in the way that the trial court managed the

24

trial procedure, whereas the original claims alleged errors at the later sentencing, by [the defendant's] trial counsel, or by the prosecutor").

c

It is, of course, true that the *Apprendi* claim and the Ineffective Assistance – Causation Claim both bear some relation to the Death Results Enhancement, but that does not mean that the former claim relates back to the latter. In fact, the way in which each claim treats the Death Results Enhancement underscores that the *Apprendi* claim does not relate back to the Ineffective Assistance – Causation Claim.

As described in detail above, the *Apprendi* claim rests upon the premise that West's sentence is invalid because the Death Results Enhancement was *not* submitted to the jury and that the cause of Day's death was thus *not* reflected in the jury's verdict. The Ineffective Assistance – Causation Claim rests on the opposite premise: that the cause of Day's death – the very issue at the heart of the Death Results Enhancement – *was* presented to the jury for decision. Indeed, the point of the Ineffective Assistance – Causation Claim was that West's trial counsel should have presented evidence concerning the cause of Day's demise because the jury's determination of West's guilt or innocence turned, in part, on that issue. For these reasons, the fact that the *Apprendi* claim and the Ineffective Assistance – Causation Claim both bear some relation to the cause of Day's death and to the Death Results Enhancement does not mean that the *Apprendi* claim relates back to the Ineffective

25

Assistance – Causation Claim.  And because the *Apprendi* claim does not relate back to the Ineffective Assistance – Causation Claim, the *Apprendi* claim cannot be deemed timely under the relation-back doctrine.

d

West counters that the *Apprendi* claim is timely under the relation-back doctrine because it relates back to the Government's response to his 2255 Motion. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13484.)  As noted above, in that response, the Government said that the causation defense that West said his trial counsel should have pursued would have been "inapplicable, frivolous, and irrelevant to the offense charged" because the cause of Day's death was not an element of that offense. (Resp. to 2255 Motion, ECF No. 842, PageID.11577-11578.)  West argues that his *Apprendi* claim relates back to this argument by the Government because the claim and the Government's argument both "address the very same issue at the cause of death." (Renewed Bond Mot., ECF No. 1026, PageID.13484.)  There are two problems with West's position.

First, the proper relation-back analysis here focuses on West's original 2255 Motion, not the Government's response to that motion.  As the Supreme Court has explained in the related context of habeas proceedings under 28 U.S.C. § 2254, "[t]he 'original pleading' to which Rule 15 refers is . . . the petition in a habeas proceeding." *Mayle*, 545 U.S. at 655.  The Sixth Circuit has likewise explained that Rule 15(c)'s

26

"use of the definite article ('the')" in conjunction with the word "original" demonstrates "that Rule 15 refers to one specific document" – "the initial complaint (or petition) in the case in which the amendment occurs." *Watkins,* 57 F.4th at 580. Thus, whether the *Apprendi* claim relates back under Rule 15(c) is evaluated with reference to the Ineffective Assistance – Causation Claim in the original 2255 Motion, not with reference to the Government's response to that motion.  Second (and in any event), the *Apprendi* claim would still be untimely even if (1) it related back to the Government's response and (2) such relation back was relevant under Rule 15(c).  That is because the Government filed the response *after* the one-year limitations period had expired. (*See* Resp. to 2255 Mot., ECF No. 842.)

e

For all of these reasons, the Court finds that the *Apprendi* claim would not relate back to the Ineffective Assistance – Causation Claim.

2

West next argues that his *Apprendi* claim would not be time-barred because (1) the order granting compassionate release in 2022 was a new judgment that restarted the limitations period for the filing of a motion under Section 2255 and (2) he asserted his *Apprendi* claim in his Rule 60(b) Motion before the restarted limitations period expired. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13481; Reply, ECF No. 1029, PageID.13542.)

This argument is foreclosed by binding Sixth Circuit precedent. The Sixth Circuit has explained that a judgment modifying an earlier-imposed sentence qualifies as a new judgment only where the second judgment imposes a "worse-than-before" sentence. *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016); *Freeman v. Wainwright*, 959 F.3d 226, 230–31 (6th Cir. 2020). Simply put, "a reduced sentence is not a new one.'" *Crangle*, 838 F.3d at 678 (quoting *United States v. Jones*, 796 F.3d 483, 485 (5th Cir. 2015)). Even more to the point, the Sixth Circuit has indicated that a judgment reducing a sentence in a compassionate release "proceeding under 18 U.S.C. § 3582(a)" is not a new judgment. *Id.* Thus, "a sentence reduction under § 3582(c)(2) does not restart the clock for AEDPA's one-year limitations period for the filing of § 2255 motions." *Jones*, 796 F.3d at 486.

West's argument that the judgment granting compassionate release restarted the limitations period suffers from another problem. That judgment was reversed by the Sixth Circuit with "instructions to deny the motion for compassionate release." *United States v. West*, 70 F.4th 341, 348 (6th Cir. 2023). "Generally, the effect of a general and unqualified reversal . . . is to nullify it completely and to leave the case standing as if such judgment . . . had never been rendered." 5 *C.J.S. Appeal and Error* § 1126 (2024); *see also Butler v. Eaton*, 141 U.S. 240, 244 (1891) (a judgment that has been reversed is "without any validity, force, or effect, and ought never to have existed"). Thus, even if the grant of compassionate release was a new

28

judgment, that judgment was vacated and ceased to have any effect.  It therefore has no bearing on whether West's *Apprendi* claim is timely.

**3**

West next contends that the Government is equitably estopped from asserting a statute of limitations defense to his *Apprendi* claim. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13485-13487.)  West appears to argue that the Government is estopped from invoking that defense because, during the Section 2255 Proceedings before the prior judge, the Government committed fraud on the court and fraudulently concealed the basis of the *Apprendi* claim.  The Court addresses West's arguments under each doctrine – fraud on the court, fraudulent concealment, and equitable estoppel – separately below.

**a**

The Court begins with West's contention that the Government committed fraud on the court during the Section 2255 Proceedings.  Fraud on the court is conduct: "(1) on the part of an officer of the court; that (2) is directed to the judicial machinery itself; (3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) is a positive averment or concealment when one is under a duty to disclose; and (5) deceives the court." *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009).  West has the burden of proving actionable fraud on the court by clear and convincing evidence. *See id.*  He has not done so.

29

As an initial matter, the Court notes that there appears to be some question as to whether fraud on the court, even when established, is sufficient to defeat a limitations defense. In the context of a claim under 42 U.S.C. § 1983, the Sixth Circuit has noted that "[a]lthough fraud upon the court may be a basis for granting a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60, and a fraudulent concealment of a cause of action may delay the commencement of the statute of limitations period, there is no authority to support [the] argument that fraud upon the court can be invoked to overcome the statute of limitations[.]" *Lewis v. Walker*, No. 17-6041, 2018 WL 4348063, at *4 (6th Cir. Mar. 15, 2018) (internal citations omitted); *see also Evans v. City of Ann Arbor*, No. 21-10575, 2022 WL 586753, at *12 (E.D. Mich. Feb. 25, 2022) (same). Thus, it is not clear whether West may invoke the Government's alleged fraud upon the court to overcome the Government's limitations defense.

But even if fraud on the court could be invoked to overcome a limitations defense, West has failed to show how or why the Government's alleged fraud here should preclude the Government from prevailing on its limitations defense. More specifically, he has not shown that the alleged fraud by the Government played any role in his failure to timely assert his *Apprendi* claim. He says that the Government committed fraud on the court in its response to his 2255 Motion – either by making false affirmative averments in the response or by concealing facts that it should have

30

revealed in the response.  But the Government filed that response *after* the one-year limitations period had already expired.  Thus, even if the Government committed fraud on the court in that response – and the Court does not mean to suggest that the Government did – that fraud could not be responsible for West's failure to assert his *Apprendi* claim within the one-year limitations period.  West also seems to suggest that the Government committed fraud on the court at sentencing when it urged the court to impose a life sentence, but he has not shown how that alleged fraud impeded his ability to detect and/or discover the *Apprendi* error and to assert his *Apprendi* claim before the limitations period expired.  Because West has not demonstrated that any alleged fraud on the court by the Government impeded his ability to present his *Apprendi* claim in a timely manner, the purported fraud does not vitiate the Government's limitations defense.

**b**

The Court next turns to West's argument that fraudulent concealment by the Government tolled the limitations period and rendered timely his assertion of the *Apprendi* claim in the Rule 60 Motion.  According to West, the Government fraudulently concealed the fact of his illegal sentence and "failed to correct the unlawful life sentence" during the Section 2255 Proceedings. (Rule 60 Mot., ECF No. 985, PageID.13063.)  West has failed to show that the alleged fraudulent concealment should toll the limitations period.

31

Fraudulent concealment may toll a statute of limitations when a party "fraudulently conceal[s] [its] wrongdoing and prevent[s] a plaintiff from filing suit during the limitations period." *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010).  The Sixth Circuit "has stated clearly the requirements imposed on one who relies on fraudulent concealment to avoid the bar of a statute of limitations. In order to succeed, a plaintiff must prove the following: '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Hill v. U.S. Dep't of Lab.*, 65 F.3d 1331, 1335 (6th Cir. 1995) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).  For purposes of the fraudulent concealment doctrine, "[w]hen individuals have 'the means of discovery in their power,' they generally are 'held to have known it.'" *Ruth*, 604 F.3d at 911 (quoting *Wood v. Carpenter*, 101 U.S. 135, 141 (1879)).

West's claim of fraudulent concealment fails because all of the facts needed to assert his *Apprendi* claim were readily available to him – and were plainly apparent – before the expiration of the limitations period.  As the then-presiding judge recognized in her ruling granting compassionate release, "[u]ncovering the [*Apprendi*] error required no investigation, fact-finding or credibility determinations. . . . The error should have been apparent from the face of the

indictment and § 1958." *United States v. West*, No. 06-20185, 2022 WL 16743864, at *7 (E.D. Mich. Nov. 7, 2022). Thus, West is deemed "to have known" those facts, and that imputed knowledge precludes West from establishing the second element of a fraudulent concealment claim – lack of knowledge. The public availability and obviousness of the facts underlying the *Apprendi* claim further prevent West from establishing the third element of his fraudulent concealment claim – that he acted with due diligence. A reasonably diligent review of the readily-accessible public docket would have revealed the facts supporting the *Apprendi* claim well before the limitations period expired.

For all of these reasons, West cannot defeat the Government's limitations defense through his claim of fraudulent concealment.

## c

To the extent that West's claim of equitable estoppel rests on some theory other than fraudulent concealment or fraud on the court, it also fails. Equitable estoppel requires "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). A party seeking to estop the government "bears a very heavy burden," and must, at a minimum, demonstrate some "'affirmative misconduct' by the government in addition to the other estoppel

elements." *Id.* "Affirmative misconduct" is "an act by the government that either intentionally or recklessly misleads the claimant." *Id.*

West's claim of equitable estoppel fails because he has not shown that he reasonably relied on any affirmative misrepresentation by the Government. The alleged misrepresentation underlying West's estoppel claim is the same one underlying his fraud on the court claim – that the Government recited the elements of the charge in its response to the 2255 Motion, "which did not include that Day's death resulted from the conspiracy, a necessary element for an enhanced life sentence[.]" (Rule 60(b) Mot., ECF No. 985, PageID.13060-13061.)   But, as described above, that alleged misrepresentation occurred after the limitations period had already expired.  Thus, West cannot establish that he relied "to his detriment" on that alleged misrepresentation in a manner that led him to miss the deadline for the filing of his *Apprendi* claim.  West's estoppel claim therefore does not overcome the Government's limitations defense.

**4**

The Court next turns to West's argument that the limitations period should be equitably tolled and his *Apprendi* claim should be deemed timely on the basis of that tolling. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13487-13489.)   West has failed to satisfy the demanding requirements for equitable tolling.

AEDPA's statute of limitations is subject to equitable tolling. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).  However, "courts grant equitable tolling 'sparingly.'" *Id.* (quoting *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)).  A habeas petitioner is entitled to equitable tolling only if he shows he "has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

West has not satisfied either requirement.  First, West has not demonstrated that he has been diligent in pursuing his rights.  West has not identified any actions that he took to uncover the *Apprendi* error.  Instead, he again points to the Government's response to his 2255 Motion, and he insists that "the factual basis for the illegal sentence was [first] disclosed" in that response. (Renewed Bond Mot., ECF No. 1026, PageID.13488.)  There are several problems with this argument.  To begin, for all of the reasons explained above, the factual basis for the illegal sentence should have been immediately apparent at the moment the sentence was imposed, and thus a reasonably diligent defendant in West's position would have discovered the error long before the Government's response to the 2255 Motion.  Next, as also noted above, the Government filed its response after the limitations period had already expired, so that response could not have prevented West from timely filing his *Apprendi* claim.  Finally, West did not seek to assert the *Apprendi* claim until

2022 – seven years after the Government filed its response to the 2255 Motion.  That delay evidences a lack of reasonable diligence.  For all of these reasons, West has not established the first element of equitable tolling.

Second, West has not shown that any extraordinary circumstances "stood in [his] way and prevented timely filing." *Hall*, 662 F.3d at 749.  As noted above, all of the information and facts that West needed to assert the *Apprendi* claim were available to West and immediately apparent as of the date of his sentencing.  No extraordinary circumstances prohibited West from acting on that information and raising his *Apprendi* claim either in his direct appeal or in his 2255 Motion.  Thus, West has failed to satisfy the second element of his equitable tolling claim.

For all of these reasons, the Court concludes that West is not entitled to equitable tolling of the statute of limitations.

**5**

West next argues that he is actually innocent of the Death Results Enhancement and that that innocence is sufficient to overcome the Government's limitations defense to the *Apprendi* claim. (*See* Renewed Bond Mot., ECF No. 1026, PageID.13490-13491.)  The Court disagrees.

**a**

A "credible showing of actual innocence" equitably tolls the statute of limitations under AEDPA. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005).  "To

establish actual innocence, [West] must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 (1995)).  "[A] claim of actual innocence must be supported with new, reliable evidence that was not presented at trial." *Wolfe v. Bock*, 412 F.Supp.2d 657, 684 (E.D. Mich. 2006).  Further, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The sole new evidence that West identifies in support of his actual innocence argument is the report of a polygraph examination administered to the bunkmate of one of West's co-defendants, Michael Bracey.  The report arguably suggests that Bracey had told his bunkmate that he (Bracey) testified falsely against another co-defendant, Christopher Scott. (*See* Polygraph, ECF No. 892-1, PageID.12017.)  The polygraph report does not show West's actual innocence because it does not mention West, nor does it suggest that he is innocent.  In light of all the evidence, the Court is not persuaded that the polygraph report establishes West's actual innocence.

**b**

West also relies on an additional theory of actual innocence: legal actual innocence.  The gist of this theory is that West is actually innocent of the Death Results Enhancement because that enhancement was never charged or found by a jury beyond a reasonable doubt. (*See* Renewed Bond Mot., ECF No. 1026,

PageID.13490-13491.) However, West cites no case in which any court has held that a defendant satisfies the actual innocence standard by showing that, in violation of *Apprendi*, he was sentenced based upon an enhancement that the jury did not find beyond a reasonable doubt. Instead, West cites authority – an unpublished memorandum decision by the Fourth Circuit, *United States v. Sweeney*, 833 F. App'x 395 (4th Cir. 2021) (per curiam), and a footnote from a decision by the Fifth Circuit, *United States v. Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019) – that found actual innocence on a materially different basis.[7] Moreover, there is authority which suggests that legal errors – like *Apprendi* errors – do not satisfy the actual innocence standard. *See, e.g.*, *Harvey v. Jones*, 179 F. App'x 294, 298–99 (6th Cir. 2006) (collecting cases). Finally, it seems doubtful that an *Apprendi* error satisfies the

---

[7] The defendant in *Sweeney* had been convicted of "carrying and using, by discharging, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii)." *Sweeney*, 833 F. App'x at 395. "The underlying crimes of violence for the § 924(c) offense were . . . charges of conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 2, 1951(a)." *Id.* As the Fourth Circuit explained, however, *as a matter of law*, the underlying crimes did not qualify as crimes of violence. *See id.* at 396–97. Thus, it was legally impossible for the defendant to have committed the crime for which he was convicted. Under those circumstances, the Fourth Circuit held that the defendant was actually innocent of that offense. *See id.* In contrast, West has not shown that it would have been legally impossible for him to have been convicted of the Death Results Enhancement. Instead, he argues – correctly – that his sentence is invalid because the jury did not find the Death Results Enhancement beyond a reasonable doubt. *Sweeney* does not speak to West's circumstances. The footnote from *Reece* is inapplicable for much the same reason. *See Reece*, 938 F.3d at 634 n.3.

actual innocence standard.  If that were the case, it would effectively do away with the Section 2255(f) statute of limitations for all *Apprendi* claims – because every defendant pressing such a claim would be actually innocent of the crime for which he was sentenced and would thus be able to invoke actual innocence to overcome a limitations defense.  West has failed to persuade the Court that his legal actual innocence argument is sufficient to overcome the Government's limitations defense.

## c

For all of these reasons, West has failed to show that the Government's limitations defense must fail on the basis that he is actually innocent.

## 6

The Court concludes with West's argument that the Government should not be permitted to invoke the statute of limitations because it waived that defense.  West says that the Government waived the defense by presenting it in a "perfunctory" manner without "factual development." (5/25/2025 Hr'g Tr., ECF No. 1035, PageID.13567, 13627, citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).)  The Court disagrees.

The Government raised the statute of limitations (and cited to the statute) in its three responses to West's Rule 60(b) motions and his related bond motion. (*See* ECF Nos. 982, 992, 1021; *see also* Resp. to Renewed Bond Mot., ECF No. 1027, PageID.13509-13518.)  And while the Government did not elaborate on the defense,

no such elaboration was necessary because the nature of the defense was obvious. The Government directed the Court to the one-year statute of limitations, and it was obvious from the parties' filings that West first raised his *Apprendi* claim outside of the limitations period.  Given this state of affairs, the Government had no need to do anything more in order to raise the limitations defense.  In particular, the Government was not required to anticipate and address all of West's rejoinders to the defense in order to properly raise the defense.  In short, the Government raised the defense in a manner that was appropriate and sufficient given the procedural posture of the case.

The circumstances here stand in sharp contrast to those in *McPherson*, the case cited by West in support of his contention that the Government waived its limitations defense.   The plaintiffs in *McPherson* brought claims against certain police officers for violating their rights under the Fourth Amendment and for subjecting them to a false arrest under Michigan law. *McPherson*, 125 F.3d at 991–92.  The district court granted judgment as a matter of law in favor of the officers, and the plaintiffs appealed that ruling. *Id.* at 992.  The Sixth Circuit held that plaintiffs had waived their arguments as to the state law claim because they "offered no real analysis as far as their state law false-arrest claim is concerned. They ha[d] not, for example, explained the elements of a false-arrest claim under Michigan law . . . and they ha[d] not pointed to evidence in the record that could [have] satisf[ied]

40

these elements as to these defendants." *Id.* at 995 (internal citation omitted).   The Sixth Circuit found a waiver on these facts because the court could not meaningfully review the plaintiffs' state law claim without an analysis of the evidence and the elements of the claims. *Id.*   Simply put, the court deemed the state law claim waived because the plaintiffs had not given the court sufficient information to evaluate the claim.

Here, in contrast, the Government's limitations defense did not require a detailed analysis of the kind required in *McPherson*.  Instead, presenting the defense was straightforward: the Government merely had to cite the one-year statute and to note that West's conviction became final more than one year before he presented his *Apprendi* claim.   The Government did that.   Under these circumstances, the Government cannot be said to have waived its limitations defense.

## IV

Before concluding, the Court addresses one last argument presented by West at the final hearing before the Court.  At that hearing, West argued that even if the Court were to conclude that he is not entitled to relief under Rule 60(b) because his *Apprendi* claim is not viable, the Court would still be obligated to evaluate the arguments in his Rule 60(b) motion – *i.e.*, his arguments that the Court should set aside the 2255 Judgment based upon the Government's alleged fraud on the Court and based upon the unusual injustice created by the judgment.  West says that the

Court must address those arguments because the Sixth Circuit specifically "directed" the Court to do so. (5/12/2025 Hr'g Tr., ECF No. 1035, PageID.13570-13572.)  The Court disagrees.

At the conclusion of its Opinion, the Sixth Circuit said that West's Rule 60(b) "motion is **REMANDED** to the district court to consider under Rule 60(b)." *In Re West*, 103 F.4th 417, 420 (6th Cir. 2024).  And, for all of the reasons explained above, when a district court considers a motion under Rule 60(b), it must ask whether the claim that the movant seeks to assert in re-opened proceedings is viable.  If not, then the district court cannot grant the motion irrespective of the strength of the movant's attack on the judgment.  Thus, when this Court started – and ended – with the question of whether West's *Apprendi* claim (that he sought to assert in re-opened Section 2255 proceedings) was viable, that was fully consistent with the Sixth Circuit's direction to "consider" West's motion "under Rule 60(b)."

## V

For all of the reasons explained above, West's Amended Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b) and (d) (ECF No. 985) is **DENIED**.  In light of the Court's ruling on the Rule 60 Motion, West's Renewed Motion for Bond (ECF No. 1026) is also **DENIED**.  However, the Court **GRANTS** West a certificate of appealability because reasonable jurists could debate whether West's motion should have been granted or whether the issues raised in his motion

deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

    **IT IS SO ORDERED.**

                                          s/Matthew F. Leitman
                                          MATTHEW F. LEITMAN
                                          UNITED STATES DISTRICT JUDGE

Dated:  July 17, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 17, 2025, by electronic means and/or ordinary mail.

                                          s/Holly A. Ryan
                                          Case Manager
                                          (313) 234-5126